POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS LLP
Marc I. Gross
Fei-Lu Qian
Jeremy Lieberman
Tamar Weinrib
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665

**'08 CIV 9930**

POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS LLP
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois  60602
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184



RECEIVED
NOV 17 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON RADZIK, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. |
|                     Plaintiff, ) ) ) | FEDERAL SECURITIES CLASS ACTION COMPLAINT |
|   vs. ) ) | |
| SADIA S.A., GILBERTO TOMAZONI, ADRIANO LIMA FERREIRA, WELSON TEIXEIRA, JR., WALTER FONTANA FILHO and EDUARDO FONTANA D'AVILA, ) ) ) ) ) ) | DEMAND FOR JURY TRIAL |
|                 Defendants. ) | |

Plaintiff Jason Radzik ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Class Action Complaint against defendants, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, Securities and Exchange Commission ("SEC") filings, and press releases published by and regarding Sadia S.A. ("Sadia" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.      This is a securities fraud class action alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials and is brought on behalf of all persons who purchased or otherwise acquired American Depository Receipts ("ADRs") of Sadia between April 30, 2008 and September 26, 2008, inclusive (the "Class Period").

2.      Sadia is a company based in Brazil that distributes food products worldwide. In order to limit losses due to contract currency fluctuations, the Company routinely entered into hedging contracts.  Throughout the Class Period, Defendants failed to disclose material adverse facts about the Company's financial well-being. Specifically, Defendants failed to disclose that (1) Sadia entered into currency derivative contracts to hedge against U.S. dollar exposure that were entirely imprudent and twice as large positions called for by the Company's hedge policy; (2) that the Company's financial

statements were materially false and misleading in that they failed to account for the Company's substantial exposure to currency market fluctuations; (3) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were inaccurate and baseless.

3.      As a result of Defendants' wrongful acts, false and misleading statements and omissions, Sadia ADRs traded at artificially inflated prices throughout the class period reaching a high of $25.84 on May 28, 2008.

4.      During the Class Period, Sadia entered into undisclosed currency derivative contracts to purportedly hedge against the Company's U.S. dollar exposure. The Company characterized the amounts of these contracts as "nominal." However, these contracts violated Company policy in that they covered export-forward exposure for twelve months' worth of sales when the Company's internal hedge policy called for only six months' worth of coverage. These currency derivative contracts were speculative and presented a great risk to shareholders that went undisclosed.

5.      As the U.S. dollar strengthened against the Brazilian Real, the value of Sadia's furtive currency derivative contracts dwindled, resulting in a loss of over U.S. $365 million. These losses led to the downgrading of Sadia by credit rating agencies, the Company's firing of its Chief Financial Officer, the resignation of the Chairman and Vice Chairman, and the decline of Sadia's stock to its lowest levels in 14 years. The Company has also had to delay several projects in order to conserve cash to cover the shortfall.

6.      Sadia's ADRs dropped $5.77 per ADR to close at $9.50 on September 26, 2008, a one day decline of 37.79% on extremely high trading volume of more than 5

million shares, resulting in damage to Class members who had purchased at prices inflated by defendants' materially false and misleading statements.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.     The Court has personal jurisdiction over this action because Sadia does business in this District and its stock trades as American Depository Shares (as evidenced by American Depository Receipts) on the New York Stock Exchange ("NYSE") under the symbol "SDA."

10.    In connection with the challenged conduct, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

### Plaintiff

11.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased ADRs of Sadia at artificially inflated prices during the Class Period and was damaged when the inflation dissipated upon disclosure of the Company's true state of affairs.

### Defendants

12. Defendant Sadia is a Brazilian corporation and maintains its principal executive offices at Rua Senador Attilio Fontana 86, Concordia, SC 89700-000, Brazil. The Company is a major Brazilian food and beverages company whose principal activities include production, distribution, exporting and marketing of refrigerated and frozen food products. The Company sells its products through retail shops and food service chains throughout Latin America, the Middle East, Asia and Europe.

13. The Company's American Depository Shares traded on the NYSE under the symbol "SDA" at all relevant times during the Class Period. In addition, Sadia's common stock trades on the Brazilian Sao Paulo Stock Exchange ("Bovespa") under the symbol "SDIA4 BZ" and on the Spanish Market for Latin-American Stocks in Euros ("LATIBEX") under the symbol "XSDI SM." The aggregate number of Sadia ADRs outstanding as of March 12, 2008 was approximately 29.945 million. Each ADR represents three shares. The percent of Sadia ADRs to underlying shares outstanding was 21.088%.

12. Defendant Gilberto Tomazoni ("Tomazoni") has served as the Company's Chief Executive Officer and as a member of the Disclosure Policy Committee since April 2005.

13. Defendant Welson Teixeira, Jr. ("Teixeira") serves as the Company's Chief Financial Officer, a position he has held since September 26, 2008. Teixeira previously served as the Company's Director of Administration and Information Technology, Investor Relations Director, Interim Financial Officer, Controller and a member of the Disclosure Policy Committee. Teixeira signed the Company's 6-Ks during the Class Period in his role as Investor Relations Director.

14.    Defendant Adriano Lima Ferreira ("Ferreira") served as the Company's Chief Financial Officer during the Class Period. Ferreira was terminated from the Company on September 26, 2008.

15.    Defendant Walter Fontana Filho ("Filho") served as the Company's President and Chairman during the Class Period. Filho resigned from the Company on October 6, 2008.

18.    Defendant Eduardo Fontana d'Avila ("d'Avila") served as the Company's Vice Chairman during the Class Period. D'Avila resigned from the Company on October 6, 2008.

19.    Defendants Tomazoni, Teixeira, Ferreira, Filho and d'Avila are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

14.    Sadia, a refrigerated and frozen protein products company, offers processed products, poultry, and pork in Brazil. The Company operates as a slaughterer and distributor of poultry and pork products, domestic exporter of poultry, and domestic distributor of frozen and refrigerated meat-based products. Sadia also specializes in the production of ready-to-eat sandwiches, lasagnas, pizzas, breads, rolls, cheese breads, and other pastry items. The Company distributes its products through distribution and sales centers located in Brazil, Latin America, the Middle East, Asia, and Europe. It is Brazil's main exporter of meat-based products. Sadia was founded in 1944 and is headquartered in Sao Paulo, Brazil.

### Defendants' False and Misleading Statements

15.    The Class Period begins on April 30, 2008 when Sadia filed with the
SEC its Form 6-K reporting interim financial information for the three-month period
ended March 31, 2008 ("First Quarter 2008 Form 6-K"). Defendant Teixeira signed the
First Quarter 2008 Form 6-K, which recorded that net income for the first quarter of
2008 was 214.9 million reals ($129 million). With regard to the Company's use of
currency contracts as its hedge strategy and the amount of assets exposed to exchange
rate variations, the First Quarter 2008 Form 6-K provided the following: (numbers
recorded in thousands)

> At March 31, 2008, the VAR-Value at Risk for the
> operational assets and liabilities and financial instruments
> exposed to exchange rate variations for one year with
> 95% confidence, amounted to R$187,711, representing
> 6.10% of shareholders' equity.
>
> * * *
>
> The Company, within its hedge strategy, uses currency
> futures contracts (US dollars, Euros and Pounds), as a
> form of mitigating exchange rate risk over operating and
> financial assets and liabilities. *The nominal amounts of
> these contracts are not recorded in the interim financial
> information*. (emphasis added)
>
> The Company's Value at Risk estimate of approximately
> R$187 million as of March 31, 2008 equated to
> approximately U.S. $106 million, using the then-
> prevailing exchange rate of 1 Real to $0.57 U.S. dollars.

16.    The press release issued on this date reinforced the notion that Sadia's
overall financial position was strong and that foreign exchange variations were
managed in a conservative manner:

> The financial result in the quarter was positive by R$ 36.8
> million, while it was negative by R$ 6.4 million in 2007.
> Sadia financial result reflects the management of its
> financial assets and liabilities and the foreign exchange

variations of its investments abroad, oriented to preserve assets and liabilities on a consolidated basis.

17. In the Company's Form 6-K for the first quarter of 2008, Sadia provided the following description of the market risks that could affect the Company, including currency variations, and its exposure to such risks:

> The Company's operations that are exposed to market risks, mainly with respect to foreign currency variations, credit risks and variations in the prices of agricultural commodities - corn, soy bean and derivatives. These risks are managed by the Risk Management area, through identification of exposures and correlations between the different risk factors, using the specific calculation method, VAR - Value at Risk and simulations of scenarios, and are permanently monitored by the Financial Committee and by the Commodities and Risk Management Committee, consisting of members of the Board of Directors, who are responsible for defining management's strategy for administering these risks, determining the limits for positions, exposure and authority for decision making.

> \* \* \*

> a. Exchange Rate Risk

> The exchange rate risk for loans, financing and any other payables denominated in foreign currency is hedged by *short-term investments* denominated in foreign currency, with same interest rates, and by derivative financial instruments, such as rate swaps (dollar to CDI), interest rate swap contracts (Libor to pre-fixed or vice-versa) and future market agreements, in addition to foreign receivables from exports, which also reduce exchange variations by serving as a "natural hedge". (emphasis added)

18. On July 30, 2008, the Company filed a Form 6-K with the SEC reporting financial results for the six-month period ended on June 30, 2008 ("First Half 2008 Form 6-K"). The 6-K recorded that the second quarter 2008 net income was 119.9 million reals ($76.8 million). The First Half 2008 Form 6-K was signed by Defendant Teixeira and provided the following regarding the Company's conservative hedge strategy, the value

at risk to currency fluctuations, the operations exposed to market risks and the "nominal" amount of the Company's currency contracts: (numbers recorded in thousands)

### Risk management and financial instruments

The Company's operations that are exposed to market risks, mainly with respect to foreign currency variations, credit risks and variations in the prices of agricultural commodities - corn, soy bean and derivatives. These risks are managed by the Risk Management area, through identification of exposures and correlations between the different risk factors, using the specific calculation method, VAR - Value at Risk and simulations of scenarios, and are permanently monitored by the Financial Committee and by the Commodities and Risk Management Committee, consisting of members of the Board of Directors, who are responsible for defining management's strategy for administering these risks, determining the limits for positions, exposure and authority for decision making. At June 30, 2008, the VAR-Value at Risk for the operational assets and liabilities and financial instruments exposed to exchange rate variations for one year with 95% confidence, amounted to R$241,710, representing 7.68% of shareholders' equity (Information not reviewed).

### Exchange rate risk

The exchange rate risk for loans, financing and any other payables denominated in foreign currency is hedged by short-term investments denominated in foreign currency, with same interest rates, and by derivative financial instruments, such as rate swaps (dollar to CDI), interest rate swap contracts (Libor to pre-fixed or vice-versa) and future market agreements, in addition to foreign receivables from exports, which also reduce exchange variations by serving as a "natural hedge".

The Company, within its hedge strategy, uses currency futures contracts (US dollars, Euros and Pounds), as a form of mitigating exchange rate risk over operating and financial assets and liabilities. The nominal amounts of these contracts are not recorded in the interim financial information.

19.    The Company's Value at Risk estimate of approximately R$241 million as of June 30, 2008 equated to approximately U.S. $150 million, using the then-prevailing exchange rate of 1 Real to $0.62 U.S. dollars.

20.    The press release issued on this date reinforced that Sadia's overall financial position was strong and that foreign exchange variations were conservatively managed:

> Sadia's financial results reflect the financial management of its financial assets and liabilities as well as the foreign exchange variations of its investments abroad.
>
> For the half year, the result was a positive amount of R$24.6 million while in 2007 it was a negative R$3.8 million. This result is obtained basically from two factors. First the decrease in interest on financial investments was due to a reduction in the nominal amount invested. Second the foreign exchange effect caused by the variation of the currency on the exposure of the assets and liabilities as well as effects from hedges.

21.    The statements referenced above in ¶¶ 15 - 20 were each materially false and/or misleading when made as they misrepresented and/or omitted the following adverse facts which then existed and disclosure of which was necessary to make the statements made not false and/or misleading including, in particular, (1) that Sadia had entered into currency derivative contracts to hedge against U.S. dollar exposure that were far larger than necessary; (2) that such contracts violated the Company's hedge policy in that the contracts covered export-forward exposure for twelve months' worth of sales when the policy called for only six months' worth of coverage; (3) that the Company's financial statements were materially false and misleading because they failed to account for the Company's massive exposure to currency market fluctuations; (4) that the Company's exposure to currency contracts was massive and not "nominal" in nature, as

Defendants claimed throughout the Class Period and should have been accounted for in the Company's financial statements; and (5) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

22.  As a result of the foregoing, the Company caused it securities to be overvalued and artificially inflated during the Class Period.

**The Truth Emerges**

23.  On September 25, 2008, after the markets closed, the Company shocked the investing public when it filed a Form 6-K with the SEC announcing that it would take a loss of approximately R$760 million (U.S. $410 million) related to the Company's investments in currency contracts hedging against the U.S. dollar. Defendant Teixeira signed the Form 6-K and acknowledged that these investments did not comport with "the purpose of protecting the activities of the Company exposed to exchange variation." The Form 6-K provided the following:

> The Finance Office (Diretoria Financeira) implemented certain transactions in the financial market, which transactions were related to the variation of U.S. Dollar against Real (Brazilian currency) in amounts above the purpose of protecting the activities of the Company exposed to exchange variation.
>
> Given the severity of the international crisis, which worsened last week and due to the high volatility of the quote of the U.S. currency, which occurred very quickly, the Board of Directors, having become aware of the implementation of such transactions, determined the adjustment of the exposure of the Company to standards of risks and limits established as part of its financial and exchange rate policies.
>
> Accordingly, the Company decided to liquidate in advance certain financial transactions, which resulted in losses of approximately R$ 760,000,000.00.

24.     This loss of approximately R$760 million far exceeded the Value at Risk figures that the Company had repeatedly disclosed during the Class Period. The Company disclosed that, as of March 31, 2008, the Value at Risk amount was only approximately R$ 187 million. Similarly, as of June 30, 2008, the Value at Risk was only approximately R$241 million. Moreover, the Company repeatedly misled investors by indicating that the amounts of its currency contracts were "nominal" and thus were not recorded in the interim financial information.

25.     The following day on September 26, 2008, the Company filed a Form 6-K with the SEC announcing that it had dismissed Defendant Ferreira as Chief Financial Officer, temporarily replacing him with Defendant Teixeira.

26.     As a result of these stunning disclosures, on September 26, 2008, Sadia's ADR price plunged a massive $5.77, or nearly 38%, to close at $9.50 on heavy trading of over 5 million shares. The following business day, the Company's stock dropped another $1.51 per share, or nearly 16%, to close at $7.99. On the Bovespa, Sadia's stock closed at R$9.30 on September 26, 2008, down R$3.00 for the day. On the LATIBEX, Sadia's stock closed at 2.41 Euros, down 1.10 Euros for the day.

27.     In an article on September 26, 2008, Bloomberg reported the following:

> Sadia SA, Brazil's second-biggest food company, said it increased its short- and medium-term debt to help cover a 760 million-real ($410 million) loss from currency operations.

> Sadia will operate with higher debt levels in coming months, Welson Teixeira Jr., who was named chief financial officer today, said on a conference call.

28.     In a separate article on the same date, Bloomberg reported the fallout from the Company's announcements:

Sadia SA, Brazil's second-biggest food company, plunged the most in at least 14 years after the company fired its chief financial officer.

Sadia fell 2.42 reals, or 26 percent, to 6.88 reals at 10:43 a.m. in Sao Paulo trading. It was the biggest drop since at least August 1994. Shares of the Concordia, Brazil-based company declined 8.1 percent this year through yesterday.

Sadia said in a statement late yesterday that its board dismissed CFO Adriano Lima Ferreira after the company posted a loss from currency-related investments. Welson Teixeira Jr. will replace him, Sadia said.

29.    Also on September 26, 2008, Moody's downgraded Sadia to Ba3 from Ba2 as a result of the Company's colossal loss. A Bloomberg article issued on this same date discussed the downgrade:

Moody's downgraded all ratings related to Sadia S.A. ("Sadia") to Ba3 from Ba2 following the announcement of some BRL 760 million in cash losses from positions in currency forward contracts and counterparty losses in its offshore investment portfolio.

The ratings remain under review for possible further downgrade. Ratings affected are as follows:

-- Local currency corporate family rating: to Ba3 from Ba2

-- USD 250 million in guaranteed senior unsecured notes due 2017 issued by Sadia Overseas Ltd. with an unconditional and irrevocable guarantee from Sadia: to Ba3 from Ba2.

All ratings remain under review for possible further downgrade.

The rating action reflects the expected increase in Sadia's adjusted total debt to EBITDA ratio to well above 4.0x as a result of new short term bank debt that has been raised over the past weeks to cover the derivatives and counterparty losses. Moody's also expects interest coverage to weaken as a result of the additional debt, with adjusted EBITA to Gross Interest Expenses below 2.0x in the near term. On July 18, 2008, Moody's changed its outlook on Sadia's ratings from positive to stable and stated that the rating

could be downgraded if adjusted total debt to EBITDA
were to be above 4.0 times or adjusted EBITA to interest
expense were to drop below 2.0 times.

The review of Sadia's ratings will focus primarily on its
overall exposure to derivatives instruments and
counterparty risk and the degree of potential impact on the
company's leverage and liquidity. If Sadia's leverage and
liquidity profile remains in line with the pro-forma position
after yesterday's announcement and today's conference call,
Moody's would likely stabilize the rating at Ba3, one notch
lower than its previous rating, to reflect the increased
leverage and weaker than expected risk controls and board
supervision. The rating could come under further
downward pressure if Sadia's adjusted LTM total debt to
EBITDA exceeds 5.0x for two consecutive quarters or if
Sadia's liquidity is pressured by weaker access to bank
export trade finance lines.

30.    On October 6, 2008, the Company announced that Defendants Filho and

d'Avila had resigned from their positions as Chairman and Vice Chairman, respectively

amid a probe into the Company's currency hedge losses. In a Form 6-K filed the next day

announcing the resignations, the Company stated:

In compliance with the provisions set forth in Paragraph 4
of Art. 157 of Law N. 6.404/76, SADIA S.A. (the
"Company") announces to its shareholders and to the
market that Mr. Walter Fontana Filho, Chairman, and Mr.
Eduardo Fontana d'Avila, Vice-Chairman, presented their
resignation letters as board members in the Extraordinary
Board Meeting held on 10.06.2008. Sadia S.A. also
announces that the resignations have been accepted by all
members of the Board, which decided to nominate, to the
next General Shareholders Meeting, Mr. Luiz Fernando
Furlan as responsible for the functions of Chairman. The
Board also decided not to fill the vice-chairman vacant post
and not to attribute its functions, for the time being, to any
member.

31.    On this same date, Bloomberg published an article discussing the

resignations and the investigation into the Company's currency hedge losses:

> Sadia SA, the Brazilian food company that fired its chief
> financial officer after posting a hedging loss, said the
> chairman and vice chairman resigned amid a probe into the
> loss.
>
> Luiz Fernando Furlan, Brazil's former trade minister, will
> take over as chairman, replacing Walter Fontana Filho,
> Sadia said today in a statement. Vice Chairman Eduardo
> Fontana d'Avila also resigned.
>
> Sadia, Brazil's second-biggest food company, said late last
> month that it fired Chief Financial Officer Adriano Lima
> Ferreira and posted a 760 million-real ($346 million)
> hedging loss. Brazil's real has plunged 28 percent against
> the dollar since the start of August, the worst performance
> of the 16 most-traded currencies.
>
> * * *
>
> Sadia shares fell 31 centavos, or 5.3 percent, to 5.60 reals
> in Sao Paulo trading. The stock has declined 45 percent this
> year.
>
> Standard & Poor's lowered its long-term credit rating on
> Sadia by one notch to "BB," or two levels below
> investment grade, from "BB+," and put the rating on
> negative outlook, citing the weakening of the company's
> position following the hedging losses.

32.    In addition, as a result of Sadia's losses in connection with the currency

hedge bets, the Company was forced to deal with its financial crisis by postponing

several projects. On October 17, 2008, Bloomberg reported the following:

> Sadia SA will postpone investments and is asking suppliers
> for discounts after losing 760 million reals ($356.8
> million) on currency-related derivatives, Valor Economico
> reported.
>
> Sadia plans to delay plans to build a 150 million-real plant
> in the United Arab Emirates and another facility in Santa
> Catarina state, whose cost is estimated at 700 million reals,
> Valor said, citing Chairman Luiz Fernando Furlan.
>
> The company sent a letter to its suppliers asking for a 10
> percent discount in October, November and December, the
> newspaper said, citing a copy of the letter.

33.   Sadia said Oct. 29 that it had a third-quarter net loss of 777.4 million reals. The company booked 1.21 billion reals in financial expenses, mostly from bad bets on currencies and other wrong-way investments. The company had a profit of 188.4 million reals in the same period last year.

34.   Bloomberg reported that on November 3, 2008 at an interview at Company headquarters in Concordia, Brazil, Furlan explained how the investments came to surpass internal limits:

> "There was possibly an intentional flaw."

35.   Bloomberg further reported on November 6, 2008 that Moody's again downgraded Sadia:

> Sadia SA, the Brazilian foodmaker that lost at least 545 million reais ($245 million) on currency bets, had its debt rating reduced by Moody's Investors Service.
>
> The rating was cut to B1, four levels below investment grade, from Ba3 because of surging debt to cover the losses, Moody's said today in a statement. Sadia's total debt inflated to 6.7 times its earnings before interest, taxes, depreciation and amortization at the end of last quarter, from 3.7 times at the end of the second quarter, Moody's said.
>
> ``The downgrade of Sadia's corporate family and senior unsecured debt ratings to B1 is primarily due to the company's significant increase in leverage,'' Soummo Mukherjee, a Moody's analyst, said in the statement. The indebtedness ballooned ``in anticipation of cash outflows to cover derivatives exposure.''
>
> ``Sadia has sufficient liquidity to meet all short-term obligations if the real does not experience significant further weakening,'' Moody's said in the statement. It said the rating outlook for Concordia, Brazil-based Sadia is stable.
>
> Brazil's second-biggest foodmaker last week posted its first net loss in nine years for the third quarter because of 1.21

billion reais in financial expenses, mostly from bad bets on currency derivatives. The net loss of 777.4 million reais compares with a profit of 188.4 million reais a year earlier.

Moody's said Sadia may still lose $2.4 billion because of its remaining derivatives exposure at the end of September.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the ADRs of Sadia on the NYSE during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Sadia ADRs were actively traded on the NYSE, an open and efficient markets. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Sadia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business, operations and management of Sadia;

- whether the Individual Defendants caused Sadia to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the market prices of Sadia ADRs during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- the ADRs of the Company traded in an efficient market;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADRs; and

- Plaintiff and members of the Class purchased their Sadia ADRs between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## CLAIMS FOR RELIEF

### COUNT I
### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make

the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Sadia ADRs; and (iii) cause Plaintiff and other members of the Class to purchase Sadia ADRs at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

47.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, and press releases designed to influence the market for Sadia ADRs. Such reports, filings, and releases were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Sadia's finances and business prospects.

48.     By virtue of their positions at Sadia, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Sadia.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Sadia's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports and releases, the market price of Sadia ADRs were artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Sadia's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Sadia ADRs at artificially inflated prices and relied upon the price of the stock, the integrity of the market for the stock and/or upon statements disseminated by defendants and were damaged thereby.

50.    During the Class Period, Sadia ADRs were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased Sadia's ADRs at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of Sadia's ADRs were substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Sadia ADRs declined sharply upon public disclosure of the facts

alleged herein to the injury of Plaintiff and Class members.

51.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's ADRs during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

53.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.    (a)    During the Class Period, the Individual Defendants participated in the operation and management of Sadia, and conducted and participated, directly and indirectly, in the conduct of Sadia's business affairs.  Because of their senior positions, they knew that the adverse facts specified herein had not been disclosed to and were actively hidden from shareholders.

(b)    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Sadia's financial condition and results of operations, and to correct promptly any public statements issued by Sadia which had become materially false or misleading.

(c)    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Sadia disseminated in the

marketplace during the Class Period concerning Sadia's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Sadia to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Sadia within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Sadia ADRs.

55.    Each of the Individual Defendants, therefore, acted as a controlling person of Sadia. By reason of their senior management positions and/or being directors of Sadia, each of the Individual Defendants had the power to direct the actions of, and exercised the same, to cause Sadia to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Sadia and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Sadia.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative and Lead Plaintiff;

B.    Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

trial by jury of all issues that may be so tried.

Dated: November 17, 2008

**POMERANTZ, HAUDEK, BLOCK,
GROSSMAN & GROSS, LLP**

By: _____

Marc I. Gross
Fei-Lu Qian
Jeremy Lieberman
Tamar Weinrib
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Counsel for Plaintiff*

**Certification of Plaintiff**
**Pursuant to Federal Securities Laws**

1.    I, Jason Radzik, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed a Complaint against Sadia SA ("Sadia"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my Sadia securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Pomerantz Firm will exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in Sadia securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed ___11/13/08___ , at ___NY, NY.___
         (Date)             (City/State)

_____
(Signature)

___Jason Radzik___
(Type or Print Name)

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|---|---|---|---|
| 9/9/2008 | Purchase | 14.157 | $17.66 |
| 9/23/2008 | Purchase | 15.1984 | $16.45 |
| 10/7/2008 | Purchase | 44.1235 | $6.80 |
| 11/4/2008 | Purchase | 11.319 | $6.63 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |